PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA MCCURDY, | ) | |
| | ) | CASE NO. 4:12cv550 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| HANOVER FIRE & CASUALTY | ) | |
| INSURANCE CO., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF Nos. 38; 40] |

This matter is before the Court upon the partial summary judgment and summary judgment motions filed by Plaintiff Teresa McCurdy and Defendant Hanover Fire & Casualty Insurance Co. ("Hanover"), respectively. ECF Nos. 38; 40. The parties responded (ECF Nos. 42; 43) and Hanover replied (ECF No. 43). For the reasons that follow, the Court denies Plaintiff's motion, denies Hanover's motion in part and grants Hanover's motion in part.

## I. Background

Plaintiff filed breach of contract and bad faith denial of insurance claims against Hanover seeking to recover insurance proceeds following a fire loss at property she owned. ECF No. 1-1 at 2-3. The fire occurred on or around June 18, 2011 at rental property located at 672 Fifth Street, SW, Warren, Ohio. ECF No. 1-1 at 2. A renter, Tamika Simmons, resided at the house.

Prior to the fire, on March 8, 2011, Plaintiff's husband Robert McCurdy, an insured party under the policy, contacted Nikolaides Insurance Agency ("Nikolaides") about obtaining an

(4:12cv550)

insurance policy and spoke to Donna Kramer, a customer service representative.[1]  ECF Nos. 40

at 4; 35 at 6, 8, 11, 17; 33 at 18-19.  During and following the telephone conversation with

Robert McCurdy, Ms. Kramer filled out the application and the resultant application listed, under

the heading "list all losses incurred in the last five years," "none."[2]  ECF Nos. 37-1 at 2; 33 at 20-

22; 35 at 17-18.  When Plaintiff came into the office to sign the application, she does not recall

reading it before signing.  ECF Nos. 32 at 20-21; 35 at 21-22.  It was later discovered that

Plaintiff had a disputed number of losses within the last five years.  ECF Nos. 40 at 5; 42 at 3.

      At the time of the fire, the McCurdys were in New York City, and Tamika Simmons was

not at the house.  ECF No. 40 at 4.  The McCurdys learned of the fire early in the morning on

June 18, 2011, and drove home from New York later that day, as originally planned.  ECF No.

33-1 at 11.  The cause of the fire was later determined to be arson.  ECF No. 40-8 at 1.

      Plaintiff submitted a claim to Hanover pursuant to the policy.  ECF No. 40 at 4.  After

conducting an investigation, including questioning the McCurdys *via* Examinations Under Oath

("EUO"), Hanover denied the claim based upon common law fraud.  ECF No. 40 at 8.  In its

denial letter, Hanover explained its reasons as follows: 1) that its investigations revealed two

prior fire losses and a theft claim by Plaintiff in the last five years, in contrast to her insurance

application stating no prior losses; 2) material misrepresentations by the McCurdys during

---

[1]  The McCurdys have a number of rental properties, which are in Plaintiff's name.  ECF No. 32 at 11.  Plaintiff works full time and Robert McCurdy maintains and operates the properties.  ECF No. 33 at 15; 32 at 13-14, 83.

[2]  Robert McCurdy does not recall Ms. Kramer asking him about the number of losses, and Ms. Kramer does not recall asking.  ECF Nos. 35 at 24-25; 33 at 20-22.

(4:12cv550)

Hanover's investigation into the loss; and 3) that the fire was intentionally set, and evidence

suggested it was done so by the McCurdys or at their direction.  ECF No. 40-5 at 1-4.  This

action followed.[3]

## II.  Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *EJS Properties,*

*LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  A party seeking summary judgment

always bears the initial responsibility of informing the court of the basis for its motion, and

identifying those portions of "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any," which it believes demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Id.* at 322-23.

When reviewing a summary judgment motion, the Court must view all the facts, evidence

and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving

party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1985).  The

Court must determine whether "the evidence presents a sufficient disagreement to require

---

[3] Plaintiff moves the Court for "partial summary judgment in her favor, finding a *prima facie* case for recovery under the parties' policy for insurance" (ECF No. 38 at 1), which the Court construes as a motion for summary judgment on the breach of contract claim only. Hanover moves for summary judgment on the breach of contract and the bad faith claim.  ECF No. 40 at 1.

3

(4:12cv550)

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  The purpose of the procedure is

not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  *Id.* at

250; *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  Thus, the Court's duty is to

determine only whether sufficient evidence has been presented to make the issue of fact a proper

question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or

determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d

398, 405 (6th Cir. 2003).  The existence of a "mere scintilla of evidence in support of the

[nonmoving party's] position is insufficient; there must be evidence on which the jury could

reasonably find for the [nonmoving party]."  *Liberty Lobby*, 477 U.S. at 252.  The nonmoving

party must present "significant probative evidence" to demonstrate more than "some

metaphysical doubt as to the material facts."  *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d

335, 340 (6th Cir. 1993) (internal citations omitted).

### III.  Analysis

#### A.  Breach of Contract

Plaintiff alleges that Hanover's failure to pay its claim breached the insurance contract.

ECF No. 1-1 at 2.  She asserts that she has presented a *prima facie* case for recovery under the

policy and should be awarded partial summary judgment.  ECF No. 38 at 1.  Hanover argues that,

with respect to Plaintiff's motion, she merely clarified the parties' burdens in presenting a case.

ECF No. 43 at 1.  Hanover further asserts that there is no genuine issue of material fact that the

policy was obtained through common law fraud and that material misrepresentations were made

4

(4:12cv550)

during the post-loss investigation, thereby entitling Hanover to deny Plaintiff's claim and,

further, to an award of summary judgment.  ECF No. 40 at 1.

**1.  Alleged Misrepresentations in the Policy Application**[4]

To the extent Hanover alleges that the policy is void because of alleged

misrepresentations in the insurance application (*see* ECF No. 40-5 at 2), this argument is

unavailing.  The Ohio Supreme Court has determined the circumstances under which a

misstatement by an insured in an application for an insurance policy renders the policy void *ab*

*initio*.  *See Allstate Ins. Co. v. Boggs*, 271 N.E. 2d 855, 858 (Ohio 1971).  "If the statement is a

warranty, a misstatement of fact voids the policy *ab initio*.  However, if the statement is a

representation, a misstatement by the insured will render the policy voidable, . . . , but it does not

void the policy *ab initio*."  *Id.*  If the policy is merely voidable, "an insurer cannot rescind a

policy after becoming liable on it."  *Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*, 692F.3d

507, 513 (6th Cir. 2012) (citing *Boggs*, 271 N.E.2d at 858 (Ohio 1971); *James v. Safeco Ins. Co.*

*of Ill.*, 959 N.E.2d 599, 601 (Ohio Ct. App. 2011)).

In order to determine whether the misstatement is a warranty or a representation, a court

considers "the insurer's decision [whether] to incorporate the statement in . . . the policy."

*Boggs*, 271 N.E.2d at 858.  A statement is a warranty if "the language of the policy, construed

---

[4]  Although Hanover's letter dated December 27, 2011 stated that it was denying coverage
because "evidence . . . suggests that the loss. . . was caused by or at the direction of an insured
person" (ECF No. 40-5 at 4), the McCurdys received a letter from Hanover's attorneys dated
November 16, 2011 which states that "it does not appear that there are any coverage issues with
respect to your involvement with the loss, based upon information received to date."  ECF No.
37-5 at 1.  In the instant matter, Hanover does not allege the McCurdys were involved in setting
the fire or that it was entitled to deny the claim on that basis.

(4:12cv550)

strictly against the insurer, requires such an interpretation . . . . If it is [the insurer's] purpose to provide that a misstatement by the insured shall render the policy void *ab initio*, such facts must appear clearly and unambiguously from the terms of the policy." *Id.*

Plaintiff argues that her insurance application is neither incorporated into the policy of insurance, nor are the application's representations characterized in the policy as warranties. *See* ECF No. 42 at 3. Hanover does not object to this characterization of the policy's provisions. The Court finds that the application is not incorporated into the policy nor are the representations characterized as warranties; thus, the policy is not void *ab initio* and the application's purported misrepresentations may not be used to avoid liability once loss has occurred.[5]

## 2. Alleged Misrepresentations During the Post-Loss Investigation

Hanover denied the McCurdys' claim based on the following policy language:

Misrepresentation, Concealment, or Fraud –
We do not provide coverage if, before or after a loss:
    a. you or any other insured have willfully concealed or misrepresented: 1) a material fact or circumstance with respect to this insurance; or 2) their interests herein; or
    b. there has been fraud or false swearing by you or any other insured with respect to this insurance or the subject thereof.

---

[5] Hanover also asserts that pre- and post-loss misrepresentations collectively give rise to a right to deny the claim. ECF No. 43 at 3. However, the case law Hanover cites in support of this argument involve only misrepresentations made post-loss, and Hanover does not explain how pre-loss misrepresentations can be folded into post-loss misrepresentations in a way that avoids the rules regarding insurance applications, described *supra*. Additionally, Hanover has not conclusively shown that the McCurdys made misrepresentations in the application, given the lackadaisical process by which the application was filled out. *See* ECF No. 35 at 24-26, 36-37(Ms. Kramer testifying that she filled out the application and did not recall asking Robert McCurdy about prior losses; that she sometimes does not ask questions yet fills in an answer even if she does not know it; and that she filled in many of the answers).

(4:12cv550)

ECF Nos. 40 at 8; 40-2 at 24.  Hanover asserts that it properly denied the McCurdys' claim

because it alleges the McCurdys made material misrepresentations during the post-loss

investigation such as: 1) concealing prior losses; 2) concealing the correct identification of Ms.

Simmons; 3) misrepresentations about the amount of contact between Robert McCurdy and Ms.

Simmons prior to the fire; concealing the criminal and civil litigation history of the McCurdys; 4)

inconsistencies as to how the McCurdys learned about the fire, whether they stopped or drove by

the house on the way back from New York, and whether Robert McCurdy had keys to the house;

and 5) misrepresentations that they were losing rent money when in fact Ms. Simmons had

moved to another of the McCurdys' properties.  ECF Nos. 40 at 6-7, 19; 43 at 3-4.  Plaintiff

argues that Hanover does not explain why or how a given fact or circumstance is material or that

the McCurdys willfully misrepresented or concealed anything.  ECF No. 42 at 4-5.

   "Concealment or fraud clauses are fully enforceable under Ohio law." *Taylor v. State

Farm Fire & Cas. Co.*, 2012 WL 1643877, at *3 (N.D.Ohio May 10, 2012) (citing *Smith v.

Allstate Indem. Co.*, 304 Fed. App'x. 430, 431-32 (6th Cir. 2008)); *see also Rainer v. Century

Sur. Ins. Co.*, 1990 WL 85207, at *5 (Ohio Ct. App. June 22, 1990) (citing *Hartford Fire Ins. Co.

v. Cincinnati Ice Mfg. & Cold Storage Co.*, 9 Ohio App. 403, at *3 (Ohio App. Ct. April 15,

1918)); *Lakes v. Buckeye State Mut. Ins. Ass'n*, 168 N.E.2d 895, 900 (Ohio App. Ct. 1959).  In

order to void the contract due to fraud or concealment, the misrepresentation must be material.

*Id.*  "[A] misrepresentation will be considered material if a reasonable insurance company, in

determining its course of action, would attach importance to the fact misrepresented." *Latimore

v. State Farm Fire and Cas., Co.*, 2012 WL 3061263, at *4 (N.D.Ohio July 26, 2012) (quoting

(4:12cv550)

*Abon, Ltd. v. Transcon. Ins. Co.*, 2005 WL 1414486, *13 (Ohio App. Ct.  June 16, 2005), in turn

quoting *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982)).[6]  The subject of the

misrepresentation "need not ultimately prove to be significant to the disposition of the claim, so

long as it was reasonably relevant to the insurer's investigation at the time."  *Abon*, 2005 WL

1414486, at *13.  Moreover, "[t]he materiality of a misrepresentation is a mixed question of law

and fact that under most circumstances should be determined by the trier of fact."  *Id*.

### a.  Alleged Misrepresentations, Inconsistencies and Concealments

As an initial matter, the Court notes that many of the alleged misrepresentations do not

appear to be misrepresentations.  For example, although Hanover states that Robert McCurdy

averred in his EUO that he did not have regular contact with Ms. Simmons, but that phone

records indicate otherwise (ECF No. 40 at 7), a review of the EUO does not reveal that Robert

McCurdy made the statements Hanover attributes to him.  During the EUO, when questioned

about whether he thought Ms. Simmons would set the fire to collect insurance money, Robert

McCurdy stated, ". . . I don't know. . . . The only— I don't know Ms. Simm[on]s like that."  ECF

No. 33-1 at 16.  He went on to say that he had only been to the house a few times, because he

does not like going to that part of town, and, when specifically asked, stated that Ms. Simmons

did not constantly complain about the condition of the rental property.  ECF No. 33-1 at 16-17.

---

[6]  Some courts have found that "a false sworn answer is material if it is calculated either to discourage, mislead or deflect the insurer's investigation in any area that might seem to the insurer, at that time, a relevant or productive area to investigate."  *Joseph v. State Farm Fire and Cas. Co.*, 2013 WL 663623, at *9 (S.D.Ohio Feb. 22, 2013), citing *Rose v. State Farm Fire & Cas. Co.*, 2012 WL 3583248, at *8 (S.D.Ohio Aug. 20, 2012).

(4:12cv550)

At no time did he represent that he did not speak to Ms. Simmons over the phone and, if he did

speak to her, how often.

Moreover, Hanover does not explain how the McCurdys concealed the real name of the

tenant.  Hanover asserts that it was "initially informed that the tenant's name was Tamika

Simms, only to learn that the correct name was Tamika Simmons." ECF No. 40 at 4.  The record

reflects that there was no written rental agreement and that rental checks came from Section 8.

ECF No. 33 at 36-37.  Thus, it seems a rather ordinary thing that the McCurdys may not have

seen their tenant's name written, and could believe her name is Simms, a reasonable phonetic

variation of Simmons.[7]

Nor does Hanover sufficiently explain how Plaintiff's statement that her husband had

keys to the house, and Robert McCurdy's statement that he did not, having given Ms. Simmons

his keys, amount to an "inconsistency" in testimony.  ECF No. 40 at 7.  The Court does not find

it unreasonable or inconsistent that Plaintiff could believe her husband had a set of keys, when he

had given his keys to Ms. Simmons.  Hanover also fails to explain the materiality of an alleged

misstatement regarding how the McCurdys learned of the fire (ECF No. 40 at 6), nor how Robert

McCurdy's "statement that they drove directly to the burned out house on their return [from]

New York City, and yet [Plaintiff] claimed that she and her husband drove by the home" (ECF

No. 40 at 7) is an inconsistency worth noting or is material in some way.

---

[7]  Hanover submitted an affidavit which states that the McCurdy's "told" them the
renter's name.  ECF No. 40-1 at 2.  It is entirely possible that the McCurdys misunderstood
"Simms" from the renter's pronunciation of "Simmons"or that Hanover misunderstood "Simms"
from the McCurdy's pronunciation of "Simmons."

(4:12cv550)

### b. Colonial Street Fire

Nevertheless, Hanover does point to some alleged misrepresentations that, if true, may be considered material.  Hanover contends that the McCurdys failed to disclose prior losses upon being questioned in their EUOs.[8] ECF No. 40 at 18-19.  Specifically, Hanover alleges that a property on Colonial Street suffered an arson fire loss in June, 2010 that the McCurdys concealed from Hanover.  ECF No. 40 at 18-19.  Hanover contends that concealment of this prior loss is material "because it would have influenced its ability to conduct a timely and accurate investigation into the fire loss."  ECF No. 40 at 19.  Plaintiff does not respond specifically to this allegation, other than to state that she was the land contract vendor for the property, which was purchased by her brother-in-law, Charles (Willie) McCurdy, and there is a "separate fact issue" as to whether the "Willie McCurdy's Colonial Street fire loss []is at all attributable to its insureds, Theresa and Robert McCurdy."  ECF No. 42 at 3, 13.  Plaintiff also argues that "there is no evidence that she 'willfully concealed' the Willie McCurdy Colonial Street loss that was not her own."  ECF No. 42 at 5.

Although Hanover appears to allege, and the McCurdys do not dispute,[9] that regardless of the status of the land contract at the time of the fire the McCurdys recovered money from the

---

[8]  Hanover repeatedly refers to "losses," and it is not clear whether it is using this word interchangeably to mean "fire," or if it specifically referring to a "claim of loss" filed with an insurance company.  *See e.g.* ECF No. 40 at 17 (referring to the "fire" at the Colonial Street address); 18 (referring to the "loss" at the Colonial Street address).  *See also* ECF No. 33 at 29 (Robert McCurdy, after being asked about "other fire losses" during his deposition, stating, "[t]hat's why the discrepancy come up when you all be saying fire loss.  When you say 'loss' I'm looking at something that's lost and gone.").

[9]  Plaintiff did not file a reply brief.

10

(4:12cv550)

insurance policy on the Colonial Street fire, the record does not clearly evince such a conclusion.

For example, it is not clear what Plaintiff means when she argues that the Colonial Street fire

"loss . . . was not her own."  ECF No. 42 at 5.  Hanover, for its part, argues that the McCurdys

"received monies for that loss" (ECF No. 43 at 3) but fails to support this claim with

substantiated evidence.  Hanover submitted an affidavit by its Vice President and Claims

Manager, Elizabeth Rultenberg, wherein Ms. Rultenberg attests,

> I spoke with . . . Nationwide [Insurance's] Special Investigation Unit and learned
> that there had been a number of fires and miscellaneous losses, of which Hanover
> was unaware, at properties owned by the McCurdys.  The information received
> included a substantial fire that occurred on June 27, 2010, identified as an arson
> fire, at 2064 Colonial Street, Warren.

ECF No. 40-1 at 2-3.  Ms. Rultenberg does not state that the McCurdys filed an insurance claim

of loss for that property and recovered funds from Nationwide, or that the property was owned by

the McCurdys at the time of the fire.  Because Hanover has not conclusively established that the

McCurdys filed an insurance claim on the Colonial Street property, the Court is unable to

determine that this took place.

To the extent Hanover argues that the McCurdys concealed the fact that a fire occurred at

the Colonial Street property, the record does reflect that the McCurdys did not reveal this fact to

the investigators during the EUO.  For example, the following exchange occurred between

Hanover and Plaintiff during the EUO:

> Q:    [having gone through all property owned currently or previously by the
>        McCurdys, ending with the Colonial Street property], at any of these
>        properties, including your house, any other losses, fires, thefts,...anything
>        like that?
> A:    With those properties?
> Q:    Yes.

11

(4:12cv550)

    A:     No.

ECF No. 32 at 87.  Similarly, Robert McCurdy was asked,

    Q:     any other family members, your family members or Teresa's, to your knowledge,
             also have fires in the houses owned or used, rented by them?
    A:     No.

ECF No. 33-1 at 13.  The record does not reveal whether, at the time of the Colonial Street fire,

Plaintiff's brother-in-law Charles had completed the purchase of the property or was still in the

process of purchasing the property.

       Because the facts surrounding the Colonial Street fire have not been sufficiently

developed and may be material, the Court cannot make a determination at the summary judgment

stage.  Although Hanover argues generally that the misrepresentation of the Colonial Street fire,

"taken with all of the other subsequent misrepresentations and inconsistencies . . . would have

been material to defendant's investigation into the fire loss" (ECF No. 43 at 3), it does not

explain how an alleged abundance of immaterial misrepresentations equals a material

misrepresentation.  Hanover's additional argument, that it would have used the information "to

compare notes with respect to how different fires occurred and whether there are any similarities"

(ECF No. 40 at 19), is more compelling, but it cannot be said, for example, that as a matter of

law knowledge of a fire at a relative's house, if Charles McCurdy owned the house at the time, is

material to the investigation.  As such, facts surrounding the Colonial Street property and the

materiality of alleged misrepresentations regarding the Colonial Street fire is an issue for the jury.

### c.  Other Losses

       Hanover alleges that the McCurdys "blatantly denied prior losses and claims during their

(4:12cv550)

examinations under oath." ECF No. 43 at 3.  Specifically, Hanover argues that Plaintiff "denied that she suffered any prior burglaries or thefts, which was untrue." ECF No.  40 at 19.  Hanover contends that this alleged misrepresentation, combined with "all the misrepresentations as a whole . . . would have influenced its ability to conduct a timely and accurate investigation into the fire loss." ECF No. 40 at 19.

Unlike prior claims for fire losses, which is superficially related to an investigation into a current fire loss claim, Hanover does not explain how an allegedly concealed theft claim relates to an investigation about fire loss.  The apparent inference to be drawn is that the McCurdys have a habit of filing insurance claims, but Hanover does not elaborate upon such an inference, and the Court is unwilling and unable to make such an inference on its own.

### d.  Prior Civil Litigation

Hanover asserts that the McCurdys made misrepresentations "relating to various civil cases that they had been involved in, all of which may have been pertinent to plaintiff's financial condition at the time of the loss." ECF No. 40 at 19.  Misrepresentations by an insured that mask the severity of her financial situation have been found to be material insofar as they indicate a possible motive for arson.  *See Parker v. State Farm Fire & Cas. Co.*, 1988 WL 1058394, at *5-7 (N.D.Ohio Nov. 4, 1988); *Taylor*, 2012 WL 1643877, at *3.  Plaintiff argues that Hanover does not explain how the McCurdys' involvement in litigation is material or that alleged concealment was done willfully, and further points to Ms. Rultenberg's deposition wherein she is hard-pressed to find materiality in the alleged misrepresentations. ECF Nos. 37 at 73-75, 97-99; 103-104; 42 at 5.

13

(4:12cv550)

Hanover does not convincingly establish that the McCurdys misrepresented their involvement in civil litigation or that such alleged misrepresentations masked their financial situation.  Hanover cannot point to, and a review of the record does not reflect, indications that representations about civil litigation clouded Hanover's grasp of the McCurdys' financial situation.  To the contrary, the McCurdys freely disclosed that they both filed for bankruptcy in the past.  ECF Nos. 32 at 90; 33-1 at 8.  Robert McCurdy stated that they had stopped paying a mortgage on a rental property because they couldn't afford to pay it, and that another property may be in foreclosure.  ECF No. 33-1 at 4-5.  Plaintiff admitted some properties were behind on property taxes.  ECF No. 32 at 90.  In short, Hanover does not establish that the McCurdys' alleged misrepresentations regarding their involvement in prior litigation masked their financial situation or is in any other way material (*See* ECF No. 40 at 19; 43 at 4).

### e.  Loss of Rent

Hanover contends that the McCurdys "failed to disclose that Ms. Simmons was then residing at another property owned by them," despite "claiming that they had been without the benefit of Ms. Simm[]ons' rent since the date of the fire."  ECF No. 40 at 6.  Plaintiff does not specifically respond to this argument, but asserts generally that Hanover does not explain how any argument is material and "to the extent any additional reasons may now appear in [] the lately-filed Affidavit of Elizabeth Raltenberg . . . [these] should be disregarded by the [C]ourt as unavailable for Civil Rule 56 consideration."  ECF No. 42 at 11.

A review of the record confirms that Hanover did not specifically list the alleged concealment of rental monies from Ms. Simmons in its denial of coverage letter to the

14

(4:12cv550)

McCurdys, but that Ms. Rultenberg did raise the issue during her deposition. *See* ECF No. 37 at 100-102. Thus, it cannot be said that the issue of rental monies from Ms. Simmons has only recently appeared in the later-filed affidavit, to the extent Plaintiff is proposing such a suggestion.

Neither party cites legal authority in support of its position as to the materiality of this particular issue. Courts have found that misrepresentations made about the value of property lost or destroyed in a fire is material, "as they bore materially on the amount defendant would pay out if it honored the policy." *Taylor*, 2012 WL 1643877, at *3-4 , citing *Parker*, 1988 WL 1058394, at *3. To the extent, however, that the McCurdys failed to disclose that Ms. Simmons moved to another of their rental properties after the fire, such a lack of disclosure does not obviously evince a misrepresentation of lost or destroyed property. Any other rental property owned by the McCurdys that is currently housing Ms. Simmons is not currently housing another potential tenant, and the fact remains that rental income from the Fifth Street property is unavailable. Thus, it cannot be said that, even if the failure to disclose that Ms. Simmons was renting another property constitutes concealment, the same would be material.

In sum, the Court finds that Hanover has advanced numerous allegations of misrepresentations and inconsistencies, many of which lack merit. The few allegations of misrepresentations Hanover does assert that may have merit are not sufficiently developed or supported by the record. As a result, summary judgment is inappropriate and denied as to both parties on the breach of contract claim.

### B. Bad Faith

Hanover moves for summary judgment on the bad faith claim, arguing that it had

15

(4:12cv550)

reasonable justification for denying the McCurdys' claim.  ECF No. 40.  In support of its

argument, it points to the aforementioned alleged misrepresentations and inconsistencies as well

as other "odd" facts surrounding the claim.  ECF No. 40 at 12-14.  Plaintiff argues that

Hanover's reasons for denying the claim were based upon "suspicions"; that the alleged

misrepresentations or concealments are not material; and, if such misrepresentations exist, they

were not willful.  ECF No. 42 at 13.

    "[A]n insurer has the duty to act in good faith in the handling and payment of the claims

of its insured.  A breach of this duty will give rise to a cause of action against the insurer."

*Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983).  To successfully assert a bad

faith claim, a plaintiff must show that the defendants "failed to exercise good faith in refusing to

pay the claim, by showing that such refusal was based upon circumstances that did not 'furnish

reasonable justification therefor.'"  *Maxey v. State Farm Fire Ins. & Cas. Co.*, 689 F. Supp. 2d

946, 953 (S.D. Ohio 2010) (quoting *Hart v. Republic Mut. Ins. Co.*, 87 N.E.2d 347, 349 (Ohio

1949)); *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994).  The inquiry under

this standard is "whether 'the decision to deny benefits was arbitrary or capricious, and there

existed a reasonable justification for the denial,' not whether the insurance company's decision to

deny [coverage] was correct."  *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, 1999 WL 1253062,

at *2 (6th Cir. Dec.16, 1999) (quoting *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.

1992)).  Moreover, "where a claim is fairly debatable the insurer is entitled to refuse the claim as

long as such refusal is premised on a genuine dispute over either the status of the law at the time

of the denial or the facts giving rise to the claim."  *Marsteller v. Security of Am. Life Ins. Co.*,

16

(4:12cv550)

2002 WL 31086111 , at *5 (N.D.Ohio Sept. 12, 2002) (quoting *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1236 (Ohio 1992).  The burden is on the plaintiff to establish bad faith, it is not a defendant's burden to establish it acted in good faith.  *Id*.; *Hoskins*, 452 N.E.2d at 1320.

Hanover asserts it had "a lawful basis for the refusal based upon the misrepresentations and concealment of facts" by the McCurdys.  ECF No. 40 at 14.  As noted, *supra*, the claim is fairly debatable, and Hanover's refusal is premised on a genuine dispute over the facts that gave rise to the claim and the status of the law at the time of denial; namely, whether misrepresentations were made post-loss that, if proven to be true, may be material.  Plaintiff merely argues that the alleged misrepresentations are not material.  ECF No. 42 at 12-13.  This is insufficient to support a bad faith claim.  The Court finds that Hanover's denial of the claim was not arbitrary or capricious, and was made with reasonable justification.  Accordingly, the Court grants summary judgment to Hanover on the bad faith claim.

### IV.  Conclusion

For the reasons stated above, the Court denies Plaintiff's Motion for Partial Summary Judgment (ECF No. 38) and Hanover's Motion for Summary Judgment (ECF No. 40) as to the breach of contract claim.  The Court grants Hanover's Motion for Summary Judgment on the bad faith claim.

IT IS SO ORDERED.


  August 9, 2013                                     */s/ Benita Y. Pearson*
Date                                                  Benita Y. Pearson
                                                      United States District Judge


17